109 P.3d 959

**In the Matter of the ESTATE OF Angelo L. LAMPARELLA, deceased.**

**Norma C. Lamparella, Personal Representative, Appellee/Cross–Appellant,**

v.

**Pamela Lamparella, Appellant/Cross–Appellee.**

**No. 1 CA–CV 04–0124.**

Court of Appeals of Arizona, Division 1, Department A.

March 28, 2005.

As Amended June 20, 2005.

Murphy Law Firm, Inc. By Thomas J. Murphy, Phoenix, Attorneys for Appellant/Cross–Appellee.

Thomas M. Shaw, Mesa, Attorney for Appellee/Cross–Appellant.

## OPINION

NORRIS, Judge.

¶ 1 In this appeal, we address the effect of two Arizona statutes on the disposition of proceeds from an annuity policy. The first statute, Arizona Revised Statutes ("A.R.S.") § 25–318(B) (Supp.2004), provides that community property not disposed of in a dissolution decree is thereafter owned by the former spouses as tenants in common. The second statute, A.R.S. § 14–2804 (1995), provides that a divorce automatically rescinds any pre-dissolution revocable disposition or appointment of property made by a divorced spouse to that person's former spouse.

¶ 2 We hold A.R.S. § 25–318(B) does not apply when a decree effectuates an explicit property settlement agreement that disposes of all of the parties' marital assets. We also hold the automatic revocation mandated by A.R.S. § 14–2804 can not be avoided by spousal inaction. Thus, if a divorced spouse wishes to redesignate the former spouse as beneficiary of a revocable disposition of property, such redesignation must be in writing and must comply with all other applicable requirements.

### FACTS AND PROCEDURAL HISTORY

¶ 3 Pamela married Angelo L. Lamparella in June 1988. In June 1996, Angelo submitted an application to Jackson National Life Insurance Company to purchase a single premium deferred annuity policy. Angelo's application indicated the annuity policy was to replace an existing Allied Signal Retirement Plan. Jackson National Life issued the annuity policy in November 1996. The policy identified Angelo as the annuitant and owner and designated Pamela as the beneficiary. Angelo paid $106,832.59 for the policy with a check drawn on an Allied Signal Savings Plan account.

¶ 4 In July 1999, Pamela filed a commercially produced, pre-printed "fill-in-the-blanks" *pro per* petition for dissolution of marriage. Pamela and Angelo jointly completed Section V of the petition, entitled "Community Property and Debts." Section V contained sub-sections that allowed Pamela

and Angelo to list and describe the community property and debts they wished to assign to each other. Pamela and Angelo completed these sub-sections in longhand and assigned certain items of real and personal property to each other.

¶ 5 Angelo and Pamela did not explicitly mention the annuity policy in the sub-sections of Section V they completed in longhand. However, Section V contained two other provisions which Pamela and Angelo selected that disposed of the remainder of their personal property and any pension and retirement benefits. As to the former, the parties checked a box next to a provision ("the personal property clause") that stated each "of the parties shall retain any and all personal property in their respective possessions and/or control." As to the latter, the parties checked a box next to a provision ("the retirement benefits clause") that stated each of the "parties shall retain as their own, any and all pensions and/or retirement benefits pursuant to their employment which are due and/or to become due." The petition requested the court to enter an order distributing the parties' community property and community debts as they had requested.

¶ 6 Angelo accepted service but did not contest the petition. A default dissolution decree was entered on March 9, 2000. The decree—also a commercially prepared, preprinted form-recited Pamela and Angelo had agreed upon the division of community property and debts as set forth in an attached exhibit. Pamela and the estate did not provide the probate court with a copy of this exhibit and the record does not reflect whether any such exhibit was ever attached to the dissolution decree. However, neither Pamela nor the estate argued in the court below that the decree failed to correspond to Section V of the petition.

¶ 7 Thereafter, Angelo did not take any steps to remove Pamela as the policy beneficiary. On June 20, 2001, however, he withdrew $69,822.85 from the $139,645.70 accumulation value of the annuity.

¶ 8 Angelo died on January 18, 2002. The probate court appointed Angelo's mother, Norma, as Personal Representative for Angelo's estate. In July 2002, the estate submitted a claim to Jackson National Life for the proceeds of the annuity policy. While the estate's claim was pending, Pamela also submitted a claim to Jackson National Life for the annuity proceeds.

¶ 9 Faced with these competing claims, Jackson National Life filed a petition with the probate court to deposit the disputed annuity policy benefits with the court. The court authorized Jackson National Life to deposit the disputed funds and, on March 14, 2003, it deposited $76,328.45 with the clerk of the court.

¶ 10 In February 2003, Pamela and the estate filed competing claims with the probate court for the annuity proceeds. The estate asserted Pamela's claim to the annuity proceeds was barred by A.R.S. § 14–2804(A). Section 14–2804(A) provides that a divorce revokes any pre-dissolution revocable disposition or appointment of property made by a divorced person to that person's former spouse. This statute applies to probate and non-probate transfers.[1]

¶ 11 In response, Pamela argued A.R.S. § 14–2804(A) was inapplicable because Angelo had made an affirmative decision to retain her as the annuity policy's beneficiary by not removing her as the beneficiary after entry of the dissolution decree. She also asserted the annuity proceeds had not been disposed of by the dissolution decree and argued she was entitled to a community property share of the proceeds pursuant to A.R.S. § 25–318(B). Section 25–318(B) provides that community property not disposed of in a dissolution decree is owned "thereafter" by the parties "as tenants in common, each possessed of an undivided one-half interest."

---

1. Probate assets are those transferred by testate or intestate succession; non-probate assets are those transferred outside of probate, such as jointly owned property, life insurance proceeds, payable-on-death accounts or other revocable dispositions made by a divorced spouse to a former spouse before the dissolution. *See In re Estate of Agans*, 196 Ariz. 367, 369, ¶ 9, 998 P.2d 449, 451 (App.1999); *In re Estate of Dobert*, 192 Ariz. 248, 252, ¶ 17, 963 P.2d 327, 331 (App. 1998); *In re Estate of Mason*, 190 Ariz. 312, 313 n. 1, 947 P.2d 886, 887 n. 1 (App.1997).

¶ 12 The estate eventually moved for summary judgment. It asserted Pamela had no claim to the policy as a tenant in common under A.R.S. § 25–318(B) because the policy had been assigned to Angelo under the personal property clause or, if construed as a retirement plan, under the retirement benefits clause. The estate also argued Pamela had no claim to the annuity proceeds as a beneficiary because A.R.S. § 14–2804(A) revoked her beneficiary status and Angelo would have had to take "affirmative action" to rename her as his beneficiary.

¶ 13 Pamela opposed the estate's summary judgment motion by, in part, incorporating arguments she raised in a motion for partial summary judgment on the A.R.S. § 25–318(B) issue. She submitted two affidavits in connection with the pending motions.

¶ 14 In the first affidavit, Pamela stated Angelo had "affirmatively intended" to keep her as the beneficiary on the annuity policy because he had not changed the beneficiary designation and wanted her to have the "death benefits." She explained Angelo had *hoped for a reconciliation* and had "loved [her] until the day he died." In the second affidavit, Pamela stated she and Angelo had evenly divided their marital estate, and had jointly completed the form "Assignment of Property and Debts," [2] but had "inadvertently forgot to include" the annuity policy.

¶ 15 After oral argument on the parties' cross-motions, by minute entry entered August 22, 2003, the probate court ruled in favor of the estate and rejected Pamela's claims to the annuity benefits. It relied on the retirement benefits clause as well as A.R.S. § 14–2804:

> Although the Decree of Dissolution did not specifically refer to the exact retirement plans owned by the parties, Pamela Lamparella clearly requested that each party be granted same as their individual sole and separate property in the Petition she

filed. The evidence does not support her claim that Angelo affirmatively decided not to remove her from the policy. Such an affirmative act would have required Angelo to submit a post-dissolution beneficiary designation for his ex-wife. Pamela's claim to the annuity benefits ended at the time of dissolution when she requested the court to grant to each party their respective retirement/pension plans. Her beneficiary designation was revoked as a matter of law pursuant to A.R.S. § 14–2804 at the time of the dissolution.

¶ 16 After the court's ruling, the estate submitted an application for an award of attorneys' fees under A.R.S. § 12–341.01(A) and/or for sanctions, and Pamela moved for reconsideration. The probate court denied the estate's fee request and Pamela's motion for reconsideration. On December 4, 2003, the probate court entered a formal order, final under Arizona Rules of Civil Procedure 54(b), granting the estate's summary judgment motion and directing the clerk of the court to release the monies on deposit to the estate. The clerk released the monies to the estate on December 17, 2004. Thereafter, the probate court entered signed orders denying the estate's fee request, Pamela's motion for reconsideration and another motion filed by Pamela seeking to stay distribution of the annuity proceeds to the estate.[3]

¶ 17 Pamela timely appealed from the probate court order granting the estate's motion for summary judgment. We have jurisdiction over Pamela's appeal pursuant to A.R.S. § 12–2101(J) (2003).

## STANDARD OF REVIEW

¶ 18 We review the trial court's grant of summary judgment de novo. *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 125, 938 P.2d 1124, 1126 (App. 1997). We review the facts and inferences

---

**2.** In her second affidavit, Pamela referred to Section V of the petition as the "Assignment of Property and Debts" form. During oral argument in this court, Pamela's counsel clarified Pamela was actually referring to Section V of the petition entitled "Community Property and Debts."

**3.** On March 16, 2004, the probate court denied Pamela's motion to stay disbursement of the annuity proceeds to the estate. Pamela did not separately appeal this order or file an amended notice of appeal. Although Pamela argues the court improperly denied her request for a stay, this issue is not properly before us.

therefrom in the light most favorable to the party against whom judgment was entered. *Id.* at 124, 938 P.2d at 1125. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Orme School v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We may affirm the trial court's judgment on other grounds if we determine the trial court reached the right result. *Chandler Med. Bldg. Partners v. Chandler Dental Group,* 175 Ariz. 273, 278, 855 P.2d 787, 792 (App. 1993).

## DISCUSSION

### I. Pamela Had No Claim to the Annuity Proceeds Under A.R.S. § 25–318(B)

■ ¶ 19 Relying on A.R.S. § 25–318(B), Pamela asserts the estate was not entitled to summary judgment because she presented the probate court with evidence she and Angelo had "forgotten" about the policy when they jointly completed Section V of the petition. She argues the policy was not included in her agreement with Angelo and was, thus, not "disposed of" in the dissolution decree. As Pamela sees it, the probate court improperly "shoehorned" the policy into the retirement benefits clause.

¶ 20 We agree with Pamela that the record presented to the probate court failed to demonstrate as a matter of law the policy was subject to the retirement benefits clause. However, we agree with the estate the policy was not omitted property under A.R.S. § 25–318(B). Accordingly, we hold the probate court properly rejected Pamela's claim to the policy proceeds under that statute.

■ ¶ 21 Section V of the petition served as the parties' property separation agreement. Under Arizona law, such an agreement is a contract. It is to be given, just like any other contract, a reasonable construction "so as to accomplish the intention of the parties." *Harris v. Harris,* 195 Ariz. 559, 562, ¶ 15, 991 P.2d 262, 265 (App. 1999). Contracts are "to be read in light of the parties' intentions as reflected by their language and in view of all circumstances; if the intention of the parties is clear from such

a reading, there is no ambiguity." *Id.* A contract is not ambiguous just because the parties to it or, as here, a party to it and the other party's successor, disagree about its meaning. *Chandler Med. Bldg.,* 175 Ariz. at 277, 855 P.2d at 791; *see also Burke v. Voicestream Wireless Corp. II,* 207 Ariz. 393, 396–97, ¶¶ 15–19, 87 P.3d 81, 84–85 (App. 2004). Language in a contract is ambiguous only when it can reasonably be construed to have more than one meaning. *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.,* 206 Ariz. 117, 120, ¶ 12, 75 P.3d 1075, 1078 (App. 2003). Although determination of the intent of contracting parties from extrinsic evidence may require fact finding, whether contract language is reasonably susceptible to more than one interpretation so that extrinsic evidence is even admissible is a question of law for the court. *Hartford v. Indus. Comm'n of Ariz.,* 178 Ariz. 106, 111, 870 P.2d 1202, 1207 (App.1994); *US West Communications, Inc. v. Ariz. Corp. Comm'n,* 185 Ariz. 277, 280, 915 P.2d 1232, 1235 (App.1996) (citing *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 158–59, 854 P.2d 1134, 1145–46 (1993)).

■ ¶ 22 As our Supreme Court has recognized, when extrinsic evidence is offered to prove a proffered interpretation of contractual language "the judge [should] first consider[ ] the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Taylor,* 175 Ariz. at 155, 854 P.2d at 1141.

¶ 23 Relying on her affidavit testimony that she and Angelo forgot about the policy, Pamela asserts Section V is reasonably susceptible to the interpretation that the policy was not included in her agreement with Angelo to divide their marital assets. But, the language used by Angelo and Pamela in Section V is not, as a matter of law, reasonably susceptible to the interpretation offered by Pamela.

¶ 24 As discussed above, Section V contained sub-sections, completed in longhand by Pamela and Angelo, that assigned to each of them certain described items of communi-

ty property. The community property distributed to Angelo or Pamela under these sub-sections ranged from pots and pans (assigned to both), furniture (also assigned to both), sheets, towels and stock and savings plan (assigned to Pamela), and the family home and other land in Arizona (value and equity split between them). In addition to these provisions, Angelo and Pamela affirmatively selected another provision—the personal property clause—and agreed, through their selection of this clause, that "each . . . shall retain any and all personal property in their respective possessions and/or control." The personal property clause was obviously designed to apply to "any and all personal property" not otherwise identified and described by Pamela and Angelo in the other sub-sections of Section V. Under the personal property clause, Pamela and Angelo relinquished any claim one of them might have against the other to any of the personal property in the possession of the other without having to specifically identify and describe that property.

¶ 25 On its face, the personal property clause is all encompassing. It is difficult to imagine a more unqualified catch-all disposition. The personal property clause is not subject to more than one interpretation and there is nothing ambiguous about it. Stated plainly, the words "each . . . shall retain any and all personal property in their respective possessions and/or control" mean exactly that and are not reasonably susceptible to Pamela's interpretation that they did not encompass the annuity policy.

¶ 26 Although Pamela asserts she and Angelo forgot about the annuity policy, she presented no evidence to the probate court that she and Angelo ever intended the personal property clause to extend to less than

"any and all personal property" in their respective possession and/or control. *See Taylor,* 175 Ariz. at 153, 854 P.2d at 1139 (court may properly decide not to consider extrinsic evidence because the "asserted meaning of the contract language is so unreasonable or extraordinary that it is improbable that the parties actually subscribed to the interpretation asserted by the proponent of the extrinsic evidence"); *Long v. City of Glendale,* 208 Ariz. 319, 329, ¶ 34, 93 P.3d 519, 529 (App. 2004) ("As *Taylor* recognizes, however, one cannot claim that one is 'interpreting' a written clause with extrinsic evidence if the resulting 'interpretation' unavoidably changes the meaning of the writing . . . .").[4]

¶ 27 Pamela also failed to present any evidence that the annuity policy was not in Angelo's "possession and control" when his marriage to Pamela ended. The record undisputably reflects the annuity policy was in his possession and under his control as he was both the annuitant and the owner. Indeed, Angelo withdrew almost half of the accumulation value of the policy before his death.[5]

¶ 28 The annuity policy was, for the foregoing reasons, allocated to Angelo under Section V of the petition and distributed to him by the decree. The policy was not omitted property under A.R.S. § 25–318(B) and Pamela had no community property or tenant in common interest in the policy proceeds.

## II. Pamela Had No Claim to the Annuity Proceeds as a Beneficiary

¶ 29 Pamela asserts the trial court improperly relied on A.R.S. § 14–2804(A) in rejecting her claim to the annuity proceeds

---

4. In oral argument before this court, Pamela's counsel argued Pamela may not have understood that an annuity policy, like a life insurance policy, is considered personal property. *See Burkett v. Mott,* 152 Ariz. 476, 478, 733 P.2d 673, 675 (App.1986) (personal property is generally defined as everything that may be owned that is not land or an interest in land, including a life insurance or annuity policy). However, Pamela did not present the probate court with any evidence she did not understand what the term "personal property" meant. Instead, she simply asserted she and Angelo had forgotten about the policy.

5. It is significant that after completing Section V of the petition, Angelo did not contest the petition and allowed Pamela to obtain the dissolution decree by default. A party is entitled to assume the relief granted on default "will not exceed or substantially differ" from the relief requested in the complaint and may "safely allow a default to be taken in reliance upon this assumption." *S. Ariz. Sch. for Boys v. Chery,* 119 Ariz. 277, 282–83, 580 P.2d 738, 743–44 (App. 1978).

as the beneficiary under the policy. Pamela's argument is grounded on Angelo's failure to revoke the beneficiary designation as well as her affidavit testimony that Angelo affirmatively intended to "keep" her as beneficiary and "knew" he needed to change the beneficiary if he desired someone other than Pamela to have "his death benefits." Pamela contends the trial court only had two options: it could either accept her affidavit testimony as true and deny the estate's motion or find the existence of disputed issues of material fact precluding summary judgment.

¶ 30 We disagree. The probate court had a third option—to grant summary judgment against Pamela—an option which it correctly selected. Given the legislature's intent in enacting A.R.S. § 14–2804 and its operation, we hold that even if Angelo intended to redesignate Pamela as his beneficiary on the annuity policy, he needed to do so in writing. Because Angelo failed to do this, the estate, not Pamela, was entitled to the annuity proceeds.

¶ 31 Section 14–2804 provides that a "divorce" automatically rescinds any pre-dissolution revocable disposition or appointment of property made by a divorced person to that person's former spouse. We have previously recognized that this statute bears a "substantial resemblance" to § 2–804 of the Uniform Probate Code. *Dobert*, 192 Ariz. at 252, ¶ 17, 963 P.2d at 331.

¶ 32 When § 14–2804 was enacted by the state legislature in 1995, it effectively overruled this court's decision in *McClain v. Beder*, 25 Ariz.App. 231, 542 P.2d 424 (1975). In *McClain*, an estate of a deceased insured sued to recover proceeds of a life insurance policy. *Id.* at 232, 542 P.2d at 425. The beneficiary under the policy was the decedent's former wife. *Id.* Because the decedent had not removed his ex-wife as the beneficiary under the policy after the parties divorced, we held it was "sounder public

policy to enforce the terms of the insurance contract," which meant the ex-spouse was entitled to the life insurance proceeds. *Id.* Indeed, we also rejected the estate's argument we should view a provision in the decree awarding each spouse all of his or her personal property as effecting a change in the beneficiary. *Id.* at 232–33, 542 P.2d at 425–26. We relied on cases from other jurisdictions holding divorce, by itself, incapable of altering the terms of an insurance contract and recognizing that, if a divorced insured spouse fails to exercise his or her power to change the beneficiary, the proceeds of the policy, as a matter of contract law, vest in the ex-spouse on the death of the insured.

¶ 33 The practical result of *McClain* was to impose an obligation on the divorced insured spouse to take affirmative steps to change the beneficiary designation. Such steps are no longer necessary. If A.R.S. § 14–2804 had been in effect when we decided *McClain*, we would have been required to set aside the trial court's decision awarding the policy proceeds to the decedent's ex-wife.

¶ 34 Arizona is not the only state to have enacted a revocation by divorce statute. Many other states have enacted similar statutes.[6] *See* James F. Walsh, *The Effect of Divorce on the Beneficiary Rights to a Nonprobate Asset*, 7 Conn. Prob. L.J. 163, 174–80 (1992) (discussing UPC and various states' revocation by divorce statutes); Alan S. Wilmit, *Applying the Doctrine of Revocation by Divorce to Life Insurance Policies*, 73 Cornell L.Rev. 653 (1988); Domenico Zaino, Jr., Comment, *The Practical Effect of Extending Revocation By Divorce Statutes to Life Insurance*, 2 Conn. Ins. L.J. 213 (1996); Debra E. Wax, Annotation, *Property Settlement Agreement as Affecting Divorced Spouse's Right to Recover as Named Beneficiary Under Former Spouse's Life Insurance Policy*, 31 A.L.R.4th 59 (2004); Annotation, *Divorce Decree Purporting to Award Life Insurance*

---

6. With minor changes, Colorado, Montana, New Mexico, North Dakota and South Dakota have enacted the text of § 2–804 of the Uniform Probate Code. Colo.Rev.Stat. § 15–11–804 (2004); Mont.Code Ann. § 72–2–814 (2003); N.M. Stat. Ann. § 45–2–804 (Michie 2004);N.D. Cent.Code § 30.1–10–04 (2003); S.D. Codified Laws § 29A–2–804 (Michie 2004). Other states have enacted

piecemeal legislation tending in the same direction, including, Michigan, Ohio, Oklahoma, Tennessee and Texas. *See* Mich. Comp. Laws §§ 552.101–.102 (2004); Ohio Rev.Code Ann. § 5302.20(c)(5) (West 2004); Okla. Stat. Ann. tit. 84, § 114 (2005); Tenn.Code Ann. § 32–1–202 (2004); Tex. Fam.Code Ann. § 9.301 (Vernon 2005).

*to Husband as Terminating Wife–Beneficiary's Rights Notwithstanding Failure to Formally Change Beneficiary,* 70 A.L.R.3d 348 (2005). As recognized in *Dobert,* such statutes rest on the belief that, after a divorce, neither spouse will usually wish to leave any part of his or her estate to the other:

> The statutes anticipate that, upon undergoing a fundamental change in family composition such as ... divorce ... [the insured] would most likely intend to provide for their new family members, and/or revoke prior provisions made for their ex-spouses. The statutes also anticipate that [the insured] will often fail to so provide and revoke, not out of conscious intent, but simply from a lack of attentiveness. By automatically revoking prior beneficiary-designations upon a change in family composition, and by substituting statutory beneficiaries in their place [the statutes] are designed to protect [the insured] from such inattentiveness.

192 Ariz. at 254, ¶ 24, 963 P.2d at 333 (quoting *Coughlin v. Bd. of Admin.,* 152 Cal. App.3d 70, 199 Cal.Rptr. 286, 287–88 (1984)).

¶ 35 Therefore, pursuant to A.R.S. § 14–2804, Angelo's designation of Pamela as the beneficiary under the annuity policy was automatically revoked upon entry of the dissolution decree. Further, upon entry of the dissolution decree, Pamela was deemed to have disclaimed her right to receive the annuity proceeds as a beneficiary. Section 14–2804(C) states: "provisions of a governing instrument [the annuity policy] are given effect as if the former spouse ... disclaimed all provisions revoked by this section...." [7]

¶ 36 Pamela's argument—that Angelo intended to retain her as beneficiary and manifested his intention by inaction—is contrary to the wording of A.R.S. · § 14–2804(A) and conflicts with its purpose and operation. Revocation is automatic upon divorce "[e]xcept as provided by the express terms of a governing instrument, a court order or a contract relating to the division of the marital estate made by the divorced couple before or after ... divorce...." A.R.S. § 14–2804(A). This wording manifests the legislature's intent that revocation should automatically occur absent written proof to the contrary.

¶ 37 Further, the purpose of A.R.S. § 14–2804(A) would be eviscerated if a former spouse could circumvent the automatic revocation effected by the statute by submitting self-serving testimony that the decedent spouse's inaction reflected an intention to revive his or her designation of the ex-spouse as the beneficiary. Even if Angelo told Pamela he intended to retain her as his beneficiary, he was required, if the statute is to have any effect, to confirm that decision in writing with Jackson National Life.

¶ 38 In *Mearns v. Scharbach,* 103 Wash. App. 498, 12 P.3d 1048 (2000), the court considered and rejected the same argument raised by Pamela here. In that case, an ex-spouse asserted she was entitled to life insurance proceeds because the decedent spouse had allegedly made various statements that he wished the policy benefits to go to her. *Id.* at 1053. Washington's revocation by divorce statute provided that upon entry of a dissolution decree, the former spouse was deemed to have predeceased the insured spouse. *Id.* at 1051. The court rejected the ex-spouse's argument that the decedent's oral statements were sufficient to negate the operation of the statute and the legislature's purpose in enacting it. *Id.* at 1053. The court concluded any post-divorce redesignation of the ex-spouse had to be in writing. *Id.* The court also explained its conclusion was consistent with the terms of the policy which required beneficiary changes to be in writing. *Id.* We note the annuity policy purchased by Angelo contained the same requirement.

¶ 39 In *Dobert,* we recognized A.R.S. § 14–2804 does not "foreclose any choice by the insured to designate the former spouse as

---

7. The effect of a disclaimer depends on the type of property or interest being disclaimed, among other factors. Section 2–1106 of the Uniform Probate Code defines common disclaimer terms and sets forth the rules that apply to disclaimed interests in property. A.R.S. § 14–2801 (Supp. 2004) states the requirements and effects of disclaimers. Under the UPC and § 14–2801, the effect of filing a valid disclaimer is that the disclaimed interest passes as if the disclaimant had predeceased the decedent.

the beneficiary after" dissolution of marriage. 192 Ariz. at 254, ¶ 25, 963 P.2d at 333. We reiterate that position here. If a divorced spouse wishes to redesignate the former spouse as the beneficiary post-dissolution, such designation must be in writing and must otherwise comply with applicable policy terms.

¶ 40 Requiring written redesignation to reverse the effect of A.R.S. § 14–2804 does not raise "unconstitutional impairment of contract and takings issues," as Pamela asserts. We addressed these arguments in *Dobert.* There, during marriage, the husband obtained a life insurance policy that named the wife as beneficiary. 192 Ariz. at 250, ¶ 2, 963 P.2d at 329. The parties divorced and the dissolution decree awarded the policy to the husband. *Id.* Section 14–2804 became effective before the entry of the dissolution decree. *Id.* After the decree, the husband died, and the wife claimed the policy proceeds. *Id.* at ¶ 3. On appeal, the wife asserted retroactive application of the statute would unconstitutionally impair her rights under the insurance policy. *Id.* at 251, ¶ 9, 963 P.2d at 330. We initially held the ex-wife was not a party to the insurance contract and had no vested right to remain the beneficiary under the policy and, consequently, had no "contractual relationship" upon which to base her constitutional claim. *Id.* at 253, ¶ 20, 963 P.2d at 332. We further held that even if a contractual relationship existed between the insurer and the ex-wife, the statute did not effect a "substantial impairment" to that relationship:

> Because, in this case, in the dissolution decree, upon the agreement of the parties, the trial court awarded the insurance policy to Dobert, [the ex-wife] lacks any reasonable basis for expecting that her beneficiary status would continue. Thus, her interest in remaining the designated beneficiary was not substantially impaired by the revocation provision of A.R.S. Section 14–2804(A) such as would offend the Arizona or United States Constitutions.

*Id.* at ¶ 21.

¶ 41 Here, A.R.S. § 14–2804(A) revoked Pamela's beneficiary designation upon entry of the dissolution decree. The evidence offered by Pamela that Angelo intended to retain her as his beneficiary was insufficient to override operation of the statute. Therefore, the trial court properly rejected Pamela's beneficiary claim to the annuity proceeds.

III. *The Probate Court Abused Its Discretion in Refusing to Award the Estate Costs, but did not Abuse Its Discretion in Refusing to Award the Estate Attorneys' Fees*

¶ 42 The estate timely cross-appealed from the probate court's denial of its request for costs under A.R.S. § 12–341 (2003), and fees under A.R.S. § 12–341.01(A) (2003), and as a sanction under A.R.S. § 12–341.01(C) and Rule 11. The trial court abused its discretion in refusing to award the estate court costs, but not in denying fees.

¶ 43 "The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law." A.R.S. § 12–341. Because the court granted the estate's motion for summary judgement, the estate was the "successful party" and was entitled to recover the costs authorized by statute.

¶ 44 Section 12–341.01(A) allows a trial court to award fees in any contested action arising out of a contract. Such an award is discretionary. The issues raised by Pamela were not frivolous and were, in part, matters of first impression. The trial court did not abuse its discretion in refusing to award fees under A.R.S. § 12–341.01(A), and an award of fees as sanctions would have been inappropriate.

IV. *Fees and Costs on Appeal*

¶ 45 The estate has requested an award of fees and costs on appeal. In an exercise of our discretion, we deny the estate's attorneys' fees request. As the prevailing party on appeal, however, the estate is entitled to an award of reasonable costs upon its compliance with Arizona Rules of Civil Appellate Procedure 21.

**CONCLUSION**

¶ 46 We affirm the probate court's decision awarding the annuity proceeds to Angelo's estate. Pamela had no right to the proceeds under A.R.S. § 25–318(B) and her status as the annuity policy beneficiary was revoked by operation of law under A.R.S. § 14–2804. We also affirm the probate court's decision denying the estate's request for fees, but reverse its decision denying court costs.

CONCURRING: JAMES B. SULT, Presiding Judge, and PATRICIA A. OROZCO, Judge.