NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

SUSAN MARIE TRASK, *Petitioner/Appellant*,

*v.*

WADE MARTIN HANDLEY, *Respondent/Appellee*.

No. 1 CA-CV 14-0543 FC
FILED 12-22-2015

Appeal from the Superior Court in Maricopa County
No.  FN2010-091228
The Honorable Boyd W. Dunn, Judge

**AFFIRMED**

COUNSEL

The Murray Law Offices, P.C., Scottsdale
By Stanley D. Murray
*Counsel for Petitioner/Appellant*

Jaburg & Wilk, P.C., Phoenix
By Jason B. Castle
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1          Susan Marie Trask (wife) appeals from the trial court's allocation of the second mortgage on the marital home and the award of attorneys' fees after the court granted Wade Martin Handley's (husband) motion for a new trial.  For following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Husband and Wife negotiated a consent decree dissolving their marriage in 2010.  The trial court approved the decree as "fair and reasonable under the circumstances."  Relevant to this appeal, the consent decree provided that husband was 100% responsible for the second mortgage on the marital home and all but one credit card obligation.  The parties were equally responsible for the first mortgage on the marital home.  However, because all the debt was held jointly or in wife's name alone, the decree provided that husband would:

> refinance all the debt he has assumed under paragraph 6a as well as the first mortgage.  [Husband] shall have the exclusive possession and ownership of the home upon refinancing the debt releasing [wife] from liability thereof.  Until the 1st and 2nd mortgage and debts assumed have been refinanced, both parties will continue to co-own the [marital home].  Accordingly[,] the parties agree to the following conditions.
>
> . . . .
>
> n.          The parties agree, following of the decree of divorce [sic], until the first day of September 2012, [husband] shall have the option to take ownership of the home if [husband] is able to provide proof of refinancing all debt that he has assumed in paragraph 6a including the Chase 1st mortgage which [wife] has assumed.  It would be necessary to refinance because

2

all the debt is held either jointly or solely in [wife's] name.

. . . .

q.     If [husband] is unable to refinance and assume ownership of the [marital home] by September 1, 2012, [wife] has the option to sell the house at which time both [husband and wife] shall share equally any expenses incurred to sell the house and studio together, with both parties sharing equally any income.  Should [wife] choose to keep the house, [husband] shall relinquish ownership and sign the deed over to [wife] as sole owner, with no expectation of any exchange of money.  Both parties have the option to continue into a written agreement for [husband] to have future use of the Studio.

r.     In the event [husband] is unable to refinance the first mortgage by September 1, 2012, and chooses to remove the studio equipment, all wall treatments and current cables running within the walls, plug in wall plates, etc[.], will remain with the house so there are no holes or gaps left open and the room is preserved as it currently resides.

¶3     Husband paid off all credit card debts but was unable to refinance the first and second mortgages by September 1, 2012, and wife exercised her option to take possession of the marital home.  Husband signed a warranty deed granting wife ownership of the marital home.  He then stopped making payments on the second mortgage, and wife filed a petition to enforce the consent decree.

¶4     After an evidentiary hearing, the trial court concluded that wife was responsible for the first mortgage, but husband remained liable for the second mortgage.  The court also granted wife's request for attorneys' fees, finding husband acted unreasonably by unilaterally deciding to stop paying the second mortgage and refusing discovery requests without justification.

¶5     Before the trial court ruled on the amount of the fee award, husband filed a motion to reconsider/motion for new trial.  The trial court granted husband's request after a "review of the arguments furthered by the parties and the evidence submitted at trial, or lack thereof . . . ."

¶6          After a new evidentiary hearing, the trial court concluded that husband's obligation to pay the second mortgage was based on an assumption that husband would acquire the house and that the debt was "fully utilized" to buy studio equipment awarded to husband in the decree. The court determined that the evidence did not support wife's claim that the second mortgage was used to construct the studio and to purchase the professional recording equipment husband received in the dissolution and that wife failed to establish that the community did not benefit from the debt. The court concluded it was not fair and equitable to allocate the second mortgage to husband because wife now owned the house and any equity therein. Additionally, because the court had not yet determined the amount of wife's prior fee award, the court awarded wife $2,500 in attorneys' fees pursuant to the September 20, 2013 order but did not award either party attorneys' fees as a result of the new trial.

¶7          Wife filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.01(A)(1) (2003) and -2101(A)(2) (Supp. 2015).

## DISCUSSION

### I.  Allocation of Second Mortgage

¶8          Wife argues it was error to allocate the second mortgage to her because that debt was allocated to husband in the consent decree. "We review the trial court's interpretation of an existing decree of dissolution *de novo*." *Cohen v. Frey,* 215 Ariz. 62, 66, ¶ 10, 157 P.3d 482, 486 (App. 2007) (citation omitted); *see also In re Marriage of Johnson & Gravino,* 231 Ariz. 228, 233, ¶ 15, 293 P.3d 504, 509 (App. 2012). A decree is "an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties." *Cohen,* 215 Ariz. at 66, ¶ 10, 157 P.3d at 486 (*quoting In re Marriage of Zale,* 193 Ariz. 246, 249, ¶ 11, 972 P.2d 230, 233 (1999)). Courts do not look to extrinsic evidence to determine the meaning of the decree, but "constru[e] the decree's language in the context of the court's statutory duty" to enter a fair and equitable property allocation. *Id.,* 215 Ariz. at 67, ¶ 14, 157 P.3d at 487; *see* A.R.S. § 25-318 (A) (Supp. 2014).

¶9          "The first step in construing a decree is to determine if it is ambiguous." *Cohen*, 215 Ariz. at 66, ¶ 11, 157 P.3d at 486. A decree is ambiguous "only when the language can be reasonably construed to have more than one meaning." *Id.* (quoting *In re Estate of Lamparella,* 210 Ariz. 246, 250, ¶ 21, 109 P.3d 959, 963 (App. 2005)). This is a question of law for

4

the court. *Id.* Wife contends the language regarding husband's responsibility for the second mortgage is not ambiguous. We disagree. The decree does not clearly state which party is to pay the first or second mortgages in the event husband did not refinance all debts and wife did not list the house for sale. Apparently, the parties did not anticipate this circumstance, and it was not addressed in the decree. The decree's failure to address this situation created an ambiguity. The court was required to interpret the decree to achieve a fair and equitable result pursuant to A.R.S. § 25-318, and not in light of the parties' intent.[1] *See Cohen,* 215 Ariz. at 67, ¶ 14, 157 P.3d at 487; *see also Johnson,* 231 Ariz. at 235, ¶ 23, 293 P.3d at 511.

**¶10** Wife argues the second mortgage was a debt related to the recording studio and its assets which husband received in the decree. Wife asserts that the second mortgage was used to fund construction of the studio and buy studio equipment, so it was equitable to assign that obligation to husband. In support of her position, wife referred to the language in the decree that allowed husband to remove all studio equipment, wall treatments, and furnishings that were not attached to the structure in the event husband did not refinance and keep the house. However, even assuming that the second mortgage was used for reimbursement of the studio's construction costs, the construction costs are "improvements" that stayed with the house after husband vacated the studio. Although wife did not use the studio and chose to convert it back to a garage, wife retained these "improvements" to the house when she took ownership. Wife was able to sell some of the fixtures husband left in the studio, such as walls, windows, and doors.

**¶11** Additionally, wife did not establish that the trial court's overall property allocation was not equitable. There was no evidence as to the recent value of the marital house; although the parties appeared to agree that, with the second mortgage, it had little to no equity value based on the purchase price. Thus, if husband was ordered to pay the entire second mortgage, this would have increased the equity value of the house awarded to wife who also received the parties' only liquid assets: a $16,000 savings account and her retirement account which had an unspecified value. Husband received studio equipment purchased in 2007 or earlier at a cost of approximately $93,000 plus $43,000 in debt related to that equipment, which had since depreciated. Based on the evidence in the record regarding

---

[1] The email correspondence wife cites in support of her position constitutes extrinsic evidence of the parties' intent; therefore, we do not consider it.

the overall assets and obligations, it was equitable to allocate the second mortgage to wife as the homeowner.

¶12        As husband notes, the trial court's allocation was consistent with the provision in the decree which states that if wife opted to sell the house, the parties would share equally in any sales expenses and profits. If husband were solely responsible for the second mortgage after wife acquired ownership of the house, as wife contends, then husband's share of any sales proceeds would necessarily be reduced by the amount owed on the second mortgage. However, the decree contained no indication that husband's share of any sales proceeds would be reduced to account for his obligation to pay the second mortgage. This suggests that the second mortgage remained the obligation of the party who owned the house.[2]

¶13        Wife contends the trial court's ruling constituted an improper modification of the decree. We disagree. The decree allowed wife to keep the house in the event husband could not refinance the debt associated with the house. However, the decree failed to specify how the debts associated with the house would be allocated if wife chose to keep the house. This created a dispute properly resolved by the trial court. The trial court's allocation of the second mortgage to wife, as owner of the marital home, was a fair and equitable result.

## II. Grant of the Motion for New Trial

¶14        Wife contends the trial court erred in granting the motion for new trial because husband's motion failed to specify the reason why relief

---

[2]        As noted above, that the decree does not specify how to allocate the second mortgage in the event husband did not refinance the house or if the house was not sold. The decree also failed to allocate the parties' shared liability for the *first* mortgage if these events occurred. A literal reading would have husband pay half the first mortgage too. However, the parties agreed to reallocate their shared liability for the first mortgage so that wife alone was responsible for the first mortgage once she took title and exclusive possession of the house. This result was not set forth in the decree. Wife contends that the allocation of the first mortgage is irrelevant. However, the court was obligated to interpret the decree in a manner that resulted in a fair and equitable allocation. To do so, the court necessarily had to consider the overall property allocation and not focus only on the second mortgage.

was warranted. *See* Ariz. R. Fam. L.P. 83(C) (providing that a motion for new trial "shall specify generally the grounds upon which the motion is based"). Husband's motion satisfied Arizona Rule of Family Law Procedure 83(C) by alleging that the trial court's order was not justified by the evidence presented at the first evidentiary hearing. Moreover, wife did not raise this objection to Husband's motion below and, therefore, has waived this objection. *See Johnson*, 231 Ariz. at 235, ¶ 25, 293 P.3d at 511.[3]

**¶15**        Wife also contends the trial court failed to specify the grounds on which it granted the motion for new trial as required by Rule 83(D)(4). Again, wife did not raise this objection below; therefore, it is waived. *Id.* The court did not abuse its discretion in granting husband's motion for new trial.

### III. Attorneys' Fees

**¶16**        The court awarded wife $2,500 for attorneys' fees she incurred in the first hearing. We review the award of attorneys' fees for an abuse of discretion. *Cohen,* 215 Ariz. at 68, ¶ 18, 157 P.3d at 488.

**¶17**        Wife contends she should be awarded more than $2,500 in attorneys' fees for both hearings because husband's refusal to pay the second mortgage was unreasonable and caused her financial hardship. However, we conclude that husband was not responsible for the second mortgage after wife decided to keep the house. Therefore, his position was not unreasonable, and the court's finding that there was no financial

---

[3]        Wife argues this court should not consider husband's waiver argument because he failed to cite any authority. *See* ARCAP 13(a)(7)(A). This court may decline to consider arguments not supported by citations to authority. *See In re U.S. Currency in the Amount of $26,980,* 199 Ariz. 291, 299, ¶ 28, 18 P.3d 85, 93 (App. 2000). However, wife does not dispute that she failed to raise this argument below. Accordingly, we apply the widely accepted rule of waiver despite husband's failure to cite legal authority in support of this argument. Wife also argues that she has not waived any arguments because the order granting the motion for new trial was not final. Wife properly raised her challenges to the grant of a new trial in the appeal from the court's final appealable order entered on June 25, 2014. Wife is deemed to have waived on appeal any objection she failed to make below. *Id.*

disparity between the parties is supported by the record. Accordingly, we affirm the award of attorneys' fees in the amount of $2,500.[4]

¶18            Husband and Wife both request an award of attorneys' fees and costs on appeal. We have no current evidence of the parties' financial resources and find that neither party took an unreasonable position on appeal. Husband also failed to cite any authority for his request. *See* ARCAP 21(a)(2) (appellate court may decline to award fees where party fails to cite authority); *Johnson*, 231 Ariz. at 236, ¶ 28, 293 P.3d at 512. Therefore, each party shall bear his or her own attorneys' fees on appeal. As the successful party on appeal, husband is entitled to his taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-342 (2003).

## CONCLUSION

¶19            We affirm the order granting relief on husband's motion for new trial and the order that wife is responsible for the second mortgage. We affirm the award of attorneys' fees to Wife. Each party shall pay his or her own attorneys' fees on appeal, and husband is entitled to his taxable costs on appeal pursuant to A.R.S. § 12-342.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[4]            Husband did not cross-appeal from the award of attorneys' fees to wife.