NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ROBERT T. SPELTZ, *Petitioner/Appellant*,

*v.*

VALERIE LEE SPELTZ, *Respondent/Appellee*.

No. 1 CA-CV 22-0593 FC
FILED 7-6-2023

Appeal from the Superior Court in Maricopa County
No.  FN2018-091095
The Honorable Suzanne S. Marwil, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

The Hogle Firm, PLC, Mesa
By Nathan Hogle, Tarl N. Johnson
*Counsel for Petitioner/Appellant*

Law Offices of Deborah Varney, LLC, Mesa
By Deborah Varney
*Counsel for Respondent/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge David D. Weinzweig joined.

**B A I L E Y**, Judge:

**¶1**         Robert Speltz ("Robert") challenges the superior court's post-decree ruling awarding his former wife, Valerie Speltz ("Valerie"), a judgment for a portion of the military retirement payments he received during their divorce.[1]  He also appeals from the court's orders denying his cross petition for contempt and request for post-judgment interest on an equalization payment.  We affirm all but the court's order denying Robert's request for post-judgment interest and award Valerie her attorneys' fees and costs.

## FACTS AND PROCEDURAL HISTORY

**¶2**         The parties were married in 1989.  Robert petitioned for legal separation in May 2018, which the superior court later converted to a petition for dissolution of marriage.  Following a trial, the court entered a dissolution decree ("Decree") in July 2019.  As relevant to this appeal, the Decree divided the parties' personal property, real property, and retirement accounts.  Based on this division the court ordered Valerie to make an equalization payment to Robert.  It also ordered that the parties retain an attorney to determine the community portion of their retirement accounts and to prepare any necessary qualified domestic relations orders ("QDRO").

**¶3**         Valerie scheduled the refinance of the parties' former marital residence ("Gilbert Property") for May 2020.  Because she knew Robert would receive over $200,000 from the refinance proceeds, she filed an expedited petition to enforce the Decree provision awarding her one half of the military retirement payments he received after the termination of the marital community.  She alleged her share of these payments was

---

[1] Because Robert Speltz and Valerie Speltz share the same last name, we will refer to them, with respect, by their first names for clarity and convenience.

approximately $33,000 and asked the court to order $40,000 from Robert's refinance proceeds to be held in escrow.

¶4 Robert filed a response and cross petition for contempt ("Response/Cross Petition") alleging the Decree did not allow Valerie to "hold back" funds from the sale of the Gilbert Property. Robert acknowledged he owed Valerie one half of the military retirement pay he received after May 2018, but explained he could not calculate this obligation because he was still waiting on account statements for May 2018 through May 2019. As a counter claim, Robert sought "offsets" against this obligation from rental income Valerie received on their jointly owned residence in Minnesota ("Minnesota Property") and the equalization payment Valerie needed to make to him under the Decree.

¶5 In July 2020, the parties filed their pretrial statements. In his pretrial statement Robert presented a new claim—that he only owed Valerie one half the military retirement payments he received *after* the entry of the Decree in July 2019. Before that date, his position had been that he owed her one half of these payments from the date of the termination of the marital community over a year earlier.

¶6 The court held an evidentiary hearing. When Valerie began to testify about rents from the Minnesota Property, it prompted the following discussion between the court and Robert's attorney:

> THE COURT: [ . . .] My view is the Court already ruled what should happen with [the Minnesota Property]. Would you agree with that, Mr. Hogle?
>
> [ROBERT'S ATTORNEY]: Yes, Judge. We do agree with that.

¶7 Based on this agreement, the court concluded, it need only determine the military retirement pay issue and that it would not re-open the Decree's division of the proceeds from the parties' real property.

¶8 A week later, the superior court entered an order addressing the parties' post-decree petitions ("August 2020 Order"). The court found that Valerie was entitled to one half of Robert's net military retirement pay from the marital community termination date until the QDRO became effective in September 2022. The court declined "to enter any further orders regarding the Minnesota home." It also denied Robert's request for post-judgment interest on the equalization payment. Later, the court entered a judgment ("Judgment") against Robert for the military retirement payments.

**¶9** Robert timely appealed the August 2020 Order and Judgment. We have jurisdiction under A.R.S. § 12-2101(A)(1) and (2).

## DISCUSSION

**¶10** We review the superior court's interpretation of the decree *de novo*. *Rinegar v. Rinegar*, 231 Ariz. 85, 88, ¶ 14 (App. 2012). A decree is "an independent resolution by the court of the issues before it and rightfully is regarded in that context and not according to the negotiated intent of the parties." *In re Marriage of Zale*, 193 Ariz. 246, 249, ¶ 11 (1999). When determining the meaning of a written agreement, we look to the language used by the parties, and if it is clear and unambiguous, we go no further. *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966).

**¶11** We review an order granting or denying post-decree relief for an abuse of discretion, *see Smith v. Smith*, 253 Ariz. 43, 45, ¶ 9 (App. 2022), which occurs if the court commits an error of law in exercising its discretion, *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 23 (App. 2004). We view the evidence in the light most favorable to sustaining the court's findings and will uphold them if they are supported by any reasonable evidence. *Smith*, 253 Ariz. at 45, ¶ 9.

## I. Valerie Is Entitled to One Half of Robert's Net Military Retirement Payments from the Date the Marital Community Terminated.

**¶12** Robert argues that the 2019 Decree awarded him all personal property in his possession and in his possession at that time were the military retirement payments that accrued during the marriage, but that he received after the termination of the community in May 2018. The August 2020 Order, he contends, erroneously amended the Decree by awarding Valerie one half of these payments. He concludes the superior court did not have the authority to change the Decree a year after it was entered because it was a final judgment. *See* A.R.S. § 25-327(A).

**¶13** Robert's argument relies on the Decree's personal property clause, which states, "Robert T Speltz is awarded … all vehicles, household furniture, furnishings and appliances, and other personal property in [his] possession." He also cites *In re Estate of Lamparella*, 210 Ariz. 246, 251, ¶ 25 (App. 2005), to support his argument that the personal property provision in the Decree "is broad and encompasses cash payments [Robert] already received."

**¶14** In *Lamparella*, the parties did not expressly include the husband's annuity policy in their *pro per* fill-in-the-blank divorce decree. *Id.*

at 247-48, ¶¶ 4-6.  The court found that the decree's "catch-all" provision required allocation of the annuity to the husband's estate because the wife presented no evidence that the catch-all provision was intended to encompass less than all personal property in each of their possession, or that the annuity was not in the husband's possession and control when the marriage ended.  *Id.* at 251, ¶¶ 25-28.

**¶15**        But in *Rinegar*, which more closely resembles this case, we held retirement benefits were not included in the catch-all provision. *Rinegar*, 231 Ariz. at 86, ¶ 1.  There, the parties' divorce decree did not address the wife's retirement benefits.  *Id.* at 88, ¶ 15.  We noted under A.R.S. § 25-318(F), a judgment "shall specifically describe" the property affected.  *Id.*  We also found retirement assets are complex and "are not the type of property that can properly be disposed of in a catch-all provision." *Id.* at 89, ¶ 16.  Unlike *Lamparella*, where "[t]he parties . . . merely filled in blanks on a prepared property settlement agreement form," in *Rinegar* the issues were litigated over several months and before two different judges who addressed these complex financial matters.  *Id.* at 89, ¶ 17.  We therefore concluded the decree mistakenly omitted the retirement assets and the catch-all provision did not apply to retirement assets.  *Id.*

**¶16**        *Rinegar*, not *Lamparella* controls here.  Applying *Rinegar*, the military retirement payments were not governed by the personal property provision of the Decree.  Beyond *Rinegar*, the Decree here contains a section expressly addressing each party's community portion of the military retirement.  The "Retirement Accounts" section of the Decree states,

> IT IS ORDERED awarding to each party ½ of the community portion of the retirement plans identified as either a community asset or containing assets that belong to the community. The community portion is defined as assets acquired from the date of marriage until the date of termination of the community.

Under this clause, each party is entitled to one half of the community portion of the military retirement.  It defines the "community portion" as the interest in this retirement account "acquired from the date of marriage until the date of the termination of the community."  Here, Robert ended the community when he served Valerie on May 16, 2018, *see* A.R.S. § 25-213(B), and from that date forward, she was entitled to her one-half share of the military retirement payments accrued during the marriage.  The retirement accounts section also directed that the community portion of Robert's military retirement would be calculated and divided by QDRO.

**¶17**         Robert ignores these retirement account provisions, asserting there can be "no dispute that the personal property clause awarded the prior retirement payments [he] received to him." But he maintained the opposite position in his pleadings—*i.e.*, that Valerie *was* entitled to these funds, though subject to his enumerated offsets—until he filed his pretrial statement eight days before the evidentiary hearing. His assertion is also unreasonable because, if true, the personal property clause would negate the purpose of the retirement account clause and render it meaningless. *Stine v. Stine*, 179 Ariz. 385, 388 (App. 1994) ("A meaning should not be assigned to part of the language which would render another part meaningless, nor remake the language to alter the existing rights or obligations."). Moreover, it would conflict with the Decree's stated intention of equally dividing the community property and the court's duty to ensure a fair and equitable distribution of property. A.R.S. § 25-318(A). We therefore conclude the court did not err by enforcing the Decree's plain language dividing the community portion of Robert's military retirement as of the termination of the marital community.

## II.     The Superior Court Properly Denied Robert's Cross Petition for Contempt.

### A.     Robert Failed to State a Claim for Contempt or Enforcement Regarding Mortgage Payments on the Gilbert Property.

**¶18**         Robert argues the superior court erred by denying his petition for contempt "which sought to enforce the provisions of the Final Decree" requiring Valerie to reimburse him for one half of the mortgage payments he made on the Gilbert Property. Robert's Response/Cross Petition made no mention of these mortgage payments. To assert this claim as a cross petition, he had to set forth the relief he sought from the court. *See* Ariz. R. Fam. Law. P. 91(b)(5); *Williams v. Williams*, 228 Ariz. 160, 166, ¶ 25 (App. 2011) ("Like a complaint, a post-decree petition must set forth the relief sought."). Likewise, if he wanted the court to hold Valerie in contempt, he had to comply with the procedural requirements of Arizona Rule of Family Law Procedure 92(b), (d). By failing in both regards, he gave the court no legal basis to hold Valerie in contempt or to enforce the Decree regarding these mortgage payments.

**¶19**         Robert, instead, raised this claim for the first time in his pretrial statement. He alleged,

> [Valerie] still owes [Robert] one half of the mortgage
> payments he made on the Gilbert House from the date of the

Decree until June, 2020, when the Gilbert House was refinanced.

Although a pretrial statement may supersede the pleadings and control the subsequent course of the litigation, *Leathers v. Leathers*, 216 Ariz. 374, 378, ¶ 19 (App. 2007), the court could not enter judgment against Valerie based only on a general statement that she owed Robert a share of these mortgage payments under the Decree. *See Aetna Cas. & Sur. Co. v. Dini*, 169 Ariz. 555, 557 (App. 1991); Ariz. R. Fam. Law. P. 76.1(g)(6), (7) (pretrial statements require "detailed and concise statements of contested issues of fact and law" and "a position on each contested issue.").

**¶20** Under the Decree, the court already required Valerie to refinance the Gilbert Property and to reimburse Robert for one half of the mortgage payments. Robert did not allege that she refused to pay him these funds or that the amount she owed him should be reduced to a judgment. At the evidentiary hearing, the only evidence he presented on this claim was his testimony that Valerie owed him "approximately around $6,000" for her share of the mortgage payments. On this record, Robert's pretrial statement was insufficient for the court to find Valerie in contempt or to enter a judgment against her for the mortgage payments. *See* Ariz. R. Fam. Law. P. 92(d)(3). We see no abuse of discretion.

### B. Robert Conceded at Trial that No Further Orders were Required Regarding the Minnesota Property.

**¶21** Robert asserts that the superior court erred by failing to enter judgment against Valerie for one half of the net rental income on the parties' Minnesota Property. He points out that Valerie testified that she was receiving rental income from the Minnesota Property and that under the Decree, Robert was entitled to one half of the net rental proceeds once the property sold.

**¶22** Robert waived review of this issue by agreeing with the court that what should happen with the Minnesota Property was already addressed in the Decree. *See e.g., Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349, ¶ 17 (App. 2007) (arguments are waived on appeal if not argued at the trial court level). Moreover, Valerie agreed that under the Decree, Robert was entitled to half of the equity in the Minnesota Property, including half of the net rental income, and she agreed to pay this amount once the property sold. On this record, the court did not abuse its discretion by "declin[ing] to enter any further orders regarding the Minnesota home" and denying Robert's petition for contempt.

**C.  Robert Failed to Demonstrate Contempt or Further Orders were Necessary to Enforce the Decree's Award of Post-Judgment Interest.**

**¶23**　　　Under the Decree, Valerie had to pay Robert an equalization payment of $8,479.38 by October 2019 or statutory interest would begin to accrue from the date of the Decree.  Valerie paid Robert this equalization payment in June 2020, but she did not include a separate payment for the accrued interest.  On appeal, Robert argues the superior court erred denying his request for post-judgment interest. [2]

**¶24**　　　Robert did not allege or present any evidence that the court needed to enter post-decree orders to obtain Valerie's compliance with the Decree.  To the contrary, Valerie testified that post-judgment interest should accrue at a rate of 6.5% and that she owed him $484.71.  Her testimony was uncontroverted, and there was no indication in the record that she had refused to pay Robert this interest.

**¶25**　　　Because Robert has a right to post-judgment interest, the court erred by denying his request for post-judgment interest.  We thus vacate that portion of the order.  But because the court lacked any evidence that Valerie refused to comply with her obligation to pay Robert post-judgment interest, on this record, the court did not abuse its discretion in denying Robert's petition for contempt.[3]  *See* Ariz. R. Fam. Law. P. 92(d)(3).

## III.  Attorneys' Fees and Costs

**¶26**　　　Valerie requests her attorneys' fees on appeal under A.R.S. § 25-324(A).  After considering the parties' financial resources and Robert's unsupported positions regarding his military retirement and the Minnesota Property, in the exercise of our discretion, we award Valerie her reasonable attorneys' fees under A.R.S. § 25-324.  Because she is the prevailing party, she is also entitled to recover her taxable costs upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

---

[2] The court mistakenly transposed "Husband" and "Wife" when it denied "*Wife*'s request for post-judgment interest."  (Emphasis added).  This was a clerical mistake as Robert was the only party claiming post-judgment interest.

[3] In her answering brief, Valerie claims that she paid Robert the owed post-judgment interest in October 2021, but nothing in the record supports her claim.

## CONCLUSION

**¶27** We affirm the superior court's award to Valerie of one half of Robert's net military retirement payments from the date the marital community terminated and the court's denial of Robert's petition for contempt, but we vacate the court's order denying his request for post-judgment interest.



AMY M. WOOD • Clerk of the Court
FILED: AA