IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

KATHLEEN MARIE BALL,
*Petitioner/Appellee,*

v.

SHAWN A. BALL,
*Respondent/Appellant.*

No. 1 CA-CV 19-0787 FC

FILED 12-10-2020

Appeal from the Superior Court in Maricopa County
No. FC2017-096436
The Honorable Michael S. Mandell, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Osborn Maledon, P.A., Phoenix
By David D. Garner (argued)
*Co-Counsel for Respondent/Appellant*

Riggs, Ellsworth & Porter, PLC, Mesa
By Paul C. Riggs
*Co-Counsel for Respondent/Appellant*

Rose Law Group, PC, Scottsdale
By Audra E. Petrolle, Logan V. Elia (argued)
*Counsel for Petitioner/Appellee*

_____

**OPINION**

_____

Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Maria Elena Cruz joined. Presiding Judge James B. Morse Jr. specially concurred.

_____

**M c M U R D I E**, Judge:

**¶1**      Shawn Allen Ball ("Father") appeals from the superior court's order granting Kathleen Marie Ball's ("Mother") petition to enforce a parenting plan and awarding attorney's fees and costs. We vacate the order in part and hold: (1) the superior court erroneously interpreted the parenting plan's religious-education provisions; and (2) the court violated the First Amendment of the United States Constitution by failing to abstain from deciding whether Father's decision to have the parties' children attend The Church of Jesus Christ of Latter-day Saints complied with the parenting plan's provision that the children may be instructed in "the Christian faith." For these reasons, we remand the case for further proceedings.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**      Mother and Father married in November 1999 and have two minor children. In December 2017, Mother petitioned for dissolution. The parties represented themselves during the initial dissolution proceedings, and the court entered a default decree ("Decree"). Filed simultaneously with the Decree was a parenting plan, signed by both parents, that they prepared using a court-provided form ("Parenting Plan"). The court

_____

[1]    We view the facts in the light most favorable to upholding the superior court's ruling. *See Baker v. Meyer*, 237 Ariz. 112, 113, ¶ 2 (App. 2015).

adopted the Parenting Plan's terms as part of the Decree. The Parenting Plan provisions relevant to this appeal are as follows:

**H. RELIGIOUS EDUCATION ARRANGEMENTS:** (Choose ONE)

☒ Each parent may take the minor children to a church or place of worship of his or her choice during the time that the minor children is/are in his or her care.

☒ Both parents agree that the minor children may be instructed in the Christian faith.

☐ Both parents agree that religious arrangements are not applicable to this plan.

¶3        Approximately one year after the divorce, Father joined The Church of Jesus Christ of Latter-day Saints ("Father's Church"), and the children occasionally joined him at meetings. After Mother learned the children were accompanying Father to his church, she petitioned to enforce the Parenting Plan, claiming Father's Church is not Christian. Mother also asserted other violations of the Parenting Plan.

¶4        The superior court held two hearings on the enforcement petition. During the second hearing, Mother called a youth ministry leader from her church to testify that Father's Church is not Christian. After taking the matter under advisement, the superior court held that the Parenting Plan directs that "the Children shall only be instructed in the Christian faith" and that Father's Church was not "Christian" within the meaning of the Parenting Plan. For these reasons, the court held that Father could not take the children to Father's Church's services. The court also found that Father had violated other Parenting Plan provisions and granted Mother an award of attorney's fees.

¶5        Father appealed, and this court stayed the superior court's order. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**A.    The Reference to "Christian" in the Parenting Plan's Second Clause Did Not Abrogate Father's Right under the First Clause to Take the Children to a Place of Worship of Father's Choosing.**

¶6        In Arizona, joint legal decision-making arrangements must address each parent's "rights and responsibilities" for the child's care and decisions regarding education, health care, and religious training. A.R.S. § 25-403.02(C)(1), (2). Courts are directed to adopt a parenting plan that is "[c]onsistent with the child's best interests." A.R.S. § 25-403.02(B). We

3

review the interpretation of a parenting plan *de novo*. *Jordan v. Rea*, 221 Ariz. 581, 588, ¶ 15 (App. 2009).

¶7 To interpret a parenting plan, we apply the general rules of construction for any written instrument.[2] *See Cohen v. Frey*, 215 Ariz. 62, 66, ¶ 11 (App. 2007) ("To interpret the decree, we apply the general rules of construction for any written instrument."). The court may use its contempt power to enforce an obligation only if the responsibility is "clear, specific and unambiguous." *Munari v. Hotham*, 217 Ariz. 599, 604, ¶ 22 (App. 2008) (quoting *Ex Parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995)). For that reason, we first determine whether the plan is ambiguous. *See In re Marriage of Johnson & Gravino*, 231 Ariz. 228, 233, ¶ 16 (App. 2012). A document is ambiguous "only when [the language] can reasonably be construed to have more than one meaning." *In re Estate of Lamparella*, 210 Ariz. 246, 250, ¶ 21 (App. 2005). "[W]hether . . . language is reasonably susceptible to more than one interpretation . . . is a question of law for the court." *Id.*

¶8 The superior court found that when the Decree was entered, "both parties were practicing the Christian faith and agreed the Children would be instructed only in that faith." The court further found that "[b]ased on the evidence provided . . . Mormonism does not fall within the

---

[2] Father argues in his reply brief that the Parenting Plan is part of the Decree, not a contract, and thus parol evidence of the parties' intent is inadmissible to interpret the Parenting Plan. *See In re Marriage of Zale*, 193 Ariz. 246, 249, ¶¶ 9–12 (1999) (because parol evidence rule does not apply to judgments, it cannot be applied to dissolution decrees); *LaPrade v. LaPrade*, 189 Ariz. 243, 247 (1997) (stating that "'incorporation' and 'merger' are not synonymous" and addressing the legal consequences of each with respect to marital settlement agreements and dissolution decrees). It is not clear the authority Father cites applies with equal force to a decree, such as the one at issue here, which adopted a stipulated parenting plan. In any event, the superior court retains continuing authority to enforce or modify a parenting plan regardless of the form within which those provisions are contained. A.R.S. § 25-317(E)–(F); *see also Anderson v. Anderson*, 14 Ariz. App. 195, 198 (1971) ("Although the parties are proceeding on the agreement which is binding on them, the agreement of the parties relating to custody matters does not in any case bind the court."). Because we conclude the Parenting Plan is not ambiguous, we need not answer this question today, and will not address it further.

confines of Christian faith and thus instructing the Children in a faith other than Christianity violates the Parenting Plan."

¶9        The superior court's ruling is based on an incorrect interpretation of the Parenting Plan. The first clause of the religious-education section of the Parenting Plan unambiguously states that "[e]ach parent may take the minor children to a church or place of worship of his or her choice during the time that the minor children is/are in his or her care." This language permits Father to take the children to any "place of worship," be it "Christian" or "non-Christian." Nothing in the second clause explicitly limits or narrows this authority. The superior court erred to the extent that it found the Parenting Plan did not permit Father to take the children to a church or place of worship of his choice.

¶10       Mother nevertheless cites *Cohen v. Frey* to argue that we should "reject a commonly understood meaning of language when the surrounding language demonstrates the words have a particular import." 215 Ariz. at 66, ¶ 12. Mother argues that the second clause of the religious-education section, which states that "[b]oth parents agree that the minor children may be instructed in the Christian faith," modifies the first clause such that any church Father takes the children to must be within the Christian faith.

¶11       Mother's reliance on *Cohen* is misplaced. Contrary to Mother's argument, the second clause's direction that the parents "may" instruct their children in the Christian faith does not create ambiguity about the first clause's meaning. The use of the word "may" generally indicates permissive intent, while "shall" and "will" denote a mandatory provision. *See City of Chandler v. Ariz. Dep't of Transp.*, 216 Ariz. 435, 438–39, ¶ 10 (App. 2007); *see also Hewitt v. Helms*, 459 U.S. 460, 471 (1983) (recognizing that the word "will," like "shall" and "must," is "of an unmistakably mandatory character"), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). The Parenting Plan repeatedly demonstrates this distinction.

¶12       The Parenting Plan provides that the parents "*will* make" major medical and educational "decisions together" and directs that "neither parent *shall* do anything" to hurt the other parent's relationship with the minor children." (Emphasis added.) To interpret the word "may" in the religious-education section as mandatory rather than permissive would render the distinction between the different words meaningless. *See Walter v. Wilkinson*, 198 Ariz. 431, 432, ¶ 7 (App. 2000) ("If a statute employs both mandatory and discretionary terms, we may infer that . . . each term carr[ies] its ordinary meaning."). Thus, as the second clause is

unambiguously permissive, it allows for instruction in the Christian faith but does not require it. Therefore, it does not operate to limit the parent's rights under the first clause to take the children to any "place of worship."

¶13 Mother's argument that this interpretation makes the second clause superfluous is unavailing. Adopting Mother's assertion that the second clause limits the parents' rights under the first clause would render the first meaningless because the parents could no longer take the children to a church or place of worship of their choice. Instead, the second clause is permissive and ensures that the "children may be instructed in the Christian faith." This interpretation gives effect to both clauses in the Parenting Plan's religious-education section. *See Stine*, 179 Ariz. at 388 (noting that the meaning of one part of divorce decree should not render another part meaningless).

¶14 Mother dismisses this protection as minimal, but we do not find an explicit guarantee that the children may be instructed in the Christian faith to be an insignificant distinction from a separate guarantee that a parent may take the children to any religious service of the parent's choosing. *See Funk v. Ossman*, 150 Ariz. 578, 580-82 (App. 1986) (affirming order that child could not attend "formal Jewish religious training" but noting no objection to the child attending Jewish services). Nor does it render either clause meaningless to give full weight to both. *See* 11 Samuel Williston & Richard A. Lord, *Williston on Contracts* § 32:5 (4th ed.) ("[W]ords or clauses are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.") (citation omitted).

¶15 Finally, Mother argues that Father waived his argument by failing to urge this interpretation of the Parenting Plan before the superior court. We disagree. Although Father first suggested that the court may have to address the definition of Christianity, he later argued that the Parenting Plan "lets [the parents] do whatever they want to do." Although Father admitted that he knew Mother would have a problem if he took the children to a non-Christian church and agreed the children should be instructed in the Christian faith, he also argued that "being or not being a Christian" was not relevant. He discussed the word "may" in the second clause, which he described as the "focal point," and claimed it was permissive, not imperative. Thus, even if Father did not zealously press his interpretation of the Parenting Plan before the superior court, we do not find he waived the right to do so now. *See also City of Tempe v. Fleming,* 168 Ariz. 454, 456 (App. 1991) (In a civil case, whether a litigant can raise on appeal an

argument not made in the superior court is procedural, not jurisdictional, and may be suspended at the appellate court's discretion.)

¶16 We recognize that the parties' Parenting Plan was developed from a fill-in-the-blank form and prepared by self-represented parties. Nevertheless, the Parenting Plan plainly states that each parent (1) may take the children to a church or place of worship of his or her choice, and (2) may instruct the children in the Christian faith.

¶17 We conclude the superior court erred by holding that the Parenting Plan prevented Father from taking the children to his church.

**B.      The Ecclesiastical-Abstention Doctrine Barred the Superior Court from Considering Whether Father's Church Is Part of "the Christian Faith" under the Parenting Plan.**

¶18 Even if the second clause might constrain Father's right under the first clause, we would nonetheless vacate the superior court's holding because the court violated the First Amendment of the United States Constitution when it ruled that Father's Church is not Christian or part of the Christian Faith.

¶19 At the outset, we note that the plain language of the parenting plan—as detailed above—afforded the superior court with a means to resolve this case without engaging with the parties' religious dispute. "In general, . . . we should resolve cases on non-constitutional grounds in all cases where it is possible and prudent to do so." *State v. Korzcuch*, 186 Ariz. 190, 195 (1996); *see also In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. 208, 211 (App. 1995) ("Courts should decide cases on nonconstitutional grounds if possible, avoiding resolution of constitutional issues, when other principles of law are controlling and the case can be decided without ruling on the constitutional questions.").

¶20 However, we conclude departing from this principle of judicial restraint is appropriate and necessary here for three reasons. First, the ecclesiastical-abstention issue is raised by this case's facts and fully briefed by the parties on appeal. *Cf. Schwab v. Matley*, 164 Ariz. 421, 422, n.2 (1990) (finding "[p]rinciples of judicial economy," including the potential for the issue to arise again, that facts "squarely presented" the problem, and that it was "specially briefed, argued, and thoroughly explored," justified addressing the constitutional issue). Second, we are not faced here with a constitutional challenge to a statute or a novel question of constitutional interpretation, but the straightforward application of a well-settled constitutional doctrine. *See, e.g., Planned Parenthood Ariz., Inc. v. Am. Ass'n*

*of Pro-Life Obstetricians & Gynecologists*, 227 Ariz. 262, 269–70, ¶ 13, n.6 (App. 2011) (declining to address "larger constitutional question" of whether Arizona Constitution provides a right to abortion); *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n, Inc.*, 177 Ariz. 256, 259 (1994) (finding correct construction of relevant statutes negated need to address the constitutional issue).

**¶21** Finally, our reluctance to address constitutional issues in this context is significantly tempered because we are concerned with a potential violation of the separation between religious matters and the judiciary guaranteed by the First Amendment. "The First Amendment has erected a wall between church and state. That wall must be kept high and impregnable. We could not approve the slightest breach." *Everson v. Bd. of Educ.*, 330 U.S. 1, 18 (1947). Failing to address the ecclesiastical-abstention issue here could risk tacitly endorsing a foray into religious disputes the judiciary simply has no place in resolving. That cannot be.

**¶22** Accordingly, we address Father's constitutional arguments and conclude the superior court was required to abstain from handling Mother's claim once it became clear the dispute concerned an ecclesiastical matter, namely, whether Father's Church is part of "the Christian faith."

**¶23** The Free Exercise and Establishment Clauses of the First Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, "preclude civil courts from inquiring into ecclesiastical matters." *Ad Hoc Comm. of Parishioners of Our Lady Sun Cath. Church, Inc. v. Reiss*, 223 Ariz. 505, 510, ¶ 12 (App. 2010). The Supreme Court first described the ecclesiastical-abstention doctrine in *Watson v. Jones*, 80 U.S. 679 (1879). There, the Court set forth the bedrock principle upon which the doctrine is based:

> In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect.

*Id.* at 728. Although *Watson* concerned a relatively narrow dispute, its commitment to the judiciary's separation from religious matters was broad. Courts have applied the ecclesiastical-abstention doctrine in many contexts. *See Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich*, 426 U.S. 696, 712-13 (1976); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in*

*N. Am.*, 344 U.S. 94, 116 (1952) ("The opinion [in *Watson*] radiates, however, a spirit of freedom for religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine."); *Bruss v. Przybylo*, 895 N.E.2d 1102, 1111–23 (Ill. App. 2008) (detailing the evolution of the ecclesiastical-abstention doctrine and collecting cases).

¶24　　　This court has held that "ecclesiastical matters include 'a matter which concerns theological controversy, church discipline, ecclesiastical government, or the conformity of members of the church to the standard of morals required of them.'" *Reiss*, 223 Ariz. at 510, ¶ 12 (quoting *Watson*, 80 U.S. at 733). But "[d]epending on the circumstances, civil courts can resolve at least some church-related disputes through neutral principles of law *so long as the case is resolved without inquiry into church doctrine or belief.*" *Id.* at 512, ¶ 19 (emphasis added); *cf. Jones v. Wolf*, 443 U.S. 595, 604 (1979) ("[A] State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute."); *Christakis v. Deitsch*, 1 CA-CV19-0344, 2020 WL 7040634, at *1, ¶ 5 (Ariz. App., Dec. 1, 2020).

¶25　　　Here, the court dove into an ecclesiastical matter by addressing whether Father's Church is part of the Christian faith. That very question has long been a matter of theological debate in the United States.[3] A secular court must avoid ruling on such issues to prevent the appearance that government favors one religious view over another. *Cf. Emp. Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 877 (1990) ("The government may not . . . lend its power to one or the other side in controversies over religious authority or dogma."); *Flynn v. Estevez*, 221 So.3d 1241, 1245–53 (Fla. App.

---

[3]　　*See, e.g.*, Daniel Burke, *Are Mormons Christian? It's Complicated*, The Christian Century (Jan. 20, 2012), https://www.christiancentury.org/article/2012-01/are-mormons-christian-its-complicated; Michelle Boorstein, *After Decades of Behind-the-Scenes Diplomacy, Leaders of Catholic, Mormon Churches Meet in Rome*, Wash. Post (March 9, 2019), https://www.washingtonpost.com/religion/2019/03/09/after-decades-behind-the-scenes-diplomacy-leaders-catholic-mormon-churches-meet-rome/; *Mormons in America — Certain in Their Beliefs, Uncertain of Their Place in Society*, Pew Research Center (Jan. 12, 2012), https://www.pewforum.org/2012/01/12/mormons-in-america-executive-summary/.

2017) (applying ecclesiastical-abstention doctrine to "intramural ecclesiastical kerfuffle" over Catholic school's religion-based immunization policy).

¶26        Moreover, although the question was presented within the context of interpreting the Parenting Plan, the court did not resolve it through neutral principles of law but instead engaged in the exact type of inquiry into church doctrine or belief that the First Amendment prohibits. At the second evidentiary hearing, the court: (1) described the issue as "what is or is not within the definition of Christianity"; (2) allowed Mother to present testimony from a minister from her church claiming that Father's Church was not part of the Christian faith; and (3) admitted into evidence a chart purporting to compare the tenets of Father's Church with Christian beliefs. The court's order specifically found "that Mormonism does not fall within the confines of [the] Christian faith."

¶27        Courts are not the appropriate forum to assess whether someone who self-identifies as "Christian" qualifies to use that term. If the superior court's order could stand, the "harm of such a governmental intrusion into religious affairs would be irreparable." *McCarthy v. Fuller*, 714 F.3d 971, 976 (7th Cir. 2013). "Such a judgment could cause confusion, consternation, and dismay in religious circles." *Id.* Accordingly, the ecclesiastical-abstention doctrine applies with full force in this case, and we vacate the superior court's order on that basis.

¶28        In so holding, we observe that a parenting plan's religious-education provision may be enforced without violating First Amendment principles if the dispute does not require a court to wade into matters of religious debate or dogma. *See* A.R.S. § 25-403.02(C)(2) (consistent with child's best interests, a parenting plan includes "each parent's rights and responsibilities . . . for decisions in areas such as . . . religious training"). *But see Smith v. Smith*, 90 Ariz. 190, 193 (1961) ("[A] parent may not be deprived of the custody of a child because of the court's disagreement with such parent as to religious beliefs."). Statutory authority and caselaw also permit the court, in limited circumstances, to make decisions concerning the religious education of a child. *See, e.g.*, A.R.S. § 25-403.02(D) (empowering the court to determine disputed elements of a parenting plan); *Paul E. v. Courtney F.*, 246 Ariz. 388, 395, ¶ 27 (under A.R.S. § 25-403.02(D), "if the court awards joint legal decision-making authority, the court is authorized to resolve any conflict"); *Funk*, 150 Ariz. at 581–82 (court may interfere in the religious upbringing of a child where there "is a clear and affirmative showing that the conflicting religious beliefs affect the

general welfare of the child") (quoting *Munoz v. Munoz*, 489 P.2d 1133, 1135 (Wash. 1971)).

¶29 But parents who wish to address aspects of their children's religious education in a parenting plan should take great care to ensure those provisions are as specific and detailed as possible. Failure to do so may impermissibly entangle the court in religious matters should a dispute ever arise. This case provides a potent example of this possibility made real. The ambiguities surrounding the phrase "the Christian faith" thrust the court directly into a matter of theological controversy in which it *could not* take part. Accordingly, we vacate the court's order regarding religious education also because the First Amendment precluded the court from addressing whether Father's Church is part of "the Christian Faith."

## ATTORNEY'S FEES AND COSTS

¶30 The superior court ordered Father to pay $3000 of Mother's attorney's fees and costs under A.R.S. § 25-414(C). Because the court erred by concluding that Father violated the Parenting Plan's religious-education provisions, we vacate the fees award. But because the court found other violations of the Parenting Plan not raised on appeal, we remand to the superior court to reconsider the award's amount considering this opinion. *See* A.R.S. § 25-414(C) (providing that "costs and attorney fees . . . shall be paid by the violating parent" and "may" be awarded if "the custodial parent prevails"); *Palmer v. Palmer*, 217 Ariz. 67, 73, ¶ 22 (App. 2007) (vacating and remanding fee award where "[o]ur substantive ruling . . . may affect the factors that were considered by the family court").

¶31 Both parties request an award of attorney's fees on appeal. In the exercise of our discretion, we award Father his reasonable attorney's fees incurred on appeal. We remand to the superior court to determine a suitable award of Father's fees after considering the "totality of the litigation." *See Schwartz v. Farmers Ins. of Ariz.*, 166 Ariz. 33, 38 (App. 1990); *see also Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189 (App. 1983) (appellate court is somewhat unsuited for the fact-finding inquiry regarding attorney's fees). After determining both fee awards, the court shall then offset the larger award by the smaller award.

¶32 As the prevailing party on appeal, Father is awarded his costs upon compliance with ARCAP 21.

**CONCLUSION**

¶33     We vacate the superior court's order regarding religious education and remand the issue of attorney's fees. We affirm the court's ruling otherwise.

**M O R S E,** J., specially concurring:

¶34     I fully join the result and paragraphs 1-17 and 30-33 of the Opinion. Also, as discussed in paragraph 29, I join in urging parents to address religious-education provisions in a parenting plan with great detail and specificity to avoid impermissibly entangling courts in ecclesiastical matters.

¶35     While I have concerns about the manner in which the superior court addressed the parties' dispute in this case, I decline to join the Opinion's remaining paragraphs. Father acknowledged in his opening brief that "[i]f this Court decides to enforce the plain meaning of the Parenting Plan, then there is no reason to reach the constitutional issues." I agree. Because paragraphs 1-17 and 30-33 of the Opinion completely resolve this case without addressing broader constitutional issues, I would stop there. *See R.L. Augustine Const. Co., Inc. v. Peoria Unified School Dist.*, 188 Ariz. 368, 370 (1997) ("We will not reach a constitutional question if a case can be fairly decided on nonconstitutional grounds."); *Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 505 ¶ 11 (App. 1999) ("It is sound judicial policy to avoid deciding a case on constitutional grounds if there are nonconstitutional grounds dispositive of the case.").



AMY M. WOOD • Clerk of the Court
FILED:     AA