NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JESSICA ELVIRA SMITH, *Petitioner/Appellant*,

*v.*

DON PATRICK SMITH, *Respondent/Appellee*.

No. 1 CA-CV 20-0159 FC
FILED 5-4-2021

---

Appeal from the Superior Court in Maricopa County
No. FC2017-003485
The Honorable Margaret LaBianca, Judge

**AFFIRMED IN PART; VACATED IN PART; REVERSED IN PART
AND REMANDED**

---

COUNSEL

Stewart Law Group, Phoenix
By Kareen O'Brien
*Counsel for Petitioner/Appellant*

Kathryn L. Van Etten Attorney at Law, Phoenix
By Kathryn L. Van Etten
*Co-Counsel for Respondent/Appellee*

The Sampair Group PLLC, Glendale
By Patrick S. Sampair
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Lawrence F. Winthrop joined.

---

**B A I L E Y**, Judge:

¶1        Jessica Elvira Smith ("Mother") appeals the superior court order granting unsupervised parenting time to Don Patrick Smith ("Father"). She also appeals the allocation of fees for the court-appointed custody evaluator and therapeutic interventionist ("TI"), the denial of attorneys' fees, and the order finding she refused to comply with the parenting time order. For the reasons stated below, we reverse the parenting time and attorneys' fees orders and remand for reconsideration. All other orders are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        The parties were married in 2004 and had a child later that year. In August 2017, the child, then thirteen, called police to the house when she witnessed Father assaulting Mother during an argument. Father was arrested and later pled guilty to one count of misdemeanor assault, a domestic violence offense.

¶3        Mother petitioned for dissolution in September 2017, seeking sole legal decision-making authority and no parenting time for Father until a mental health professional assessed what was in the child's best interests. On Mother's motion, the court entered temporary orders before trial awarding her sole legal decision-making authority and ordered that Father have no contact with the child based on the no-contact condition of his probation. At Mother's request, the court also appointed Julie Skakoon as the child's safe harbor therapist.

¶4        The superior court appointed David Weinstock, Ph.D., to perform a custody evaluation, to be paid for by Father, subject to later reallocation of such expense. In February 2019, Dr. Weinstock recommended that the court appoint a TI and noted that Mother had unilaterally terminated Ms. Skakoon and hired a new counselor for the child.

¶5            The parties agreed to have the superior court appoint Dr. Robert DiCarlo as the TI, and the court ordered the parties to share his fees and costs equally.    Although Dr. Weinstock completed the custody evaluation by the time of the June 5, 2019 trial, no therapeutic intervention sessions had occurred.    After the trial, the court issued two orders: (1) a decree of dissolution addressing all property issues, denying Mother's request for attorneys' fees, and ordering Mother to pay 25% of Dr. Weinstock's fees and costs; and (2) a temporary order ("2019 temporary order") granting Mother sole legal decision-making authority and ordering that Father's supervised parenting time begin after the TI determined it was "therapeutically appropriate."    The 2019 temporary order provided for supervised parenting time for two hours a week, with a gradual increase in unsupervised parenting time after the first four weeks.

¶6            Mother filed a notice of appeal ("2019 appeal") and, five days later, a motion to alter or amend the judgment.  The superior court denied the motion to alter or amend the judgment, and Mother amended her notice of appeal to include that ruling.  On December 4, 2019, this court dismissed the 2019 appeal, finding that the decree was not final because it did not resolve the issues related to the child, and the 2019 temporary order was not appealable.  *See Gutierrez v. Fox*, 242 Ariz. 259, 264, ¶ 12 (App. 2017) (temporary orders are not appealable).

¶7            Mother then filed a special action challenging the 2019 temporary orders and the order appointing the TI.  *See Smith v. LaBianca,* 1 CA-SA 19-0279.  The superior court stayed its proceedings while the special action was pending.  This court accepted special action jurisdiction, vacated the 2019 temporary order, and directed the superior court to make a *final* ruling on legal decision-making, parenting time, and child-related issues. We left it to the superior court's discretion whether to invite additional briefing or allow further evidence before making a final ruling.

¶8            On March 17, 2020, the superior court entered final legal decision-making and parenting time orders without further briefing, argument, or evidence.    The court again awarded Mother sole legal decision-making authority after analyzing the statutory factors regarding best interests, domestic violence, and substance abuse. *See* A.R.S. §§ 25-403, -403.03, -403.04.  However, without any new evidence, the new order stated that Father would begin unsupervised parenting time immediately based on the same schedule outlined in the 2019 temporary order.  In a separate order, the court re-appointed Dr. DiCarlo as the TI with the specific intent that he would manage the family reunification process and support the family's relationship so that it may "more closely approximate" the court-

ordered parenting time plan.  Again, the parties were ordered to split his fees and costs equally.

¶9             Mother filed a notice of appeal, an expedited motion to stay, and an emergency motion to stay, arguing that unsupervised parenting time without prior therapeutic intervention would be detrimental to the child.  The superior court declined to stay the proceedings.  Mother then filed an emergency motion for a stay in this court on March 19, 2020, which we temporarily granted.  However, after full briefing, we denied the motion and lifted the stay on April 7, 2020.

¶10           According to Father, Mother did not allow him to exercise parenting time after the stay was lifted.  Mother claimed that she spoke to Father's probation officer and determined Father could not come to her residence.  Mother's attorney did not respond to Father's emails attempting to arrange parenting time on April 12 and 19, 2020.  Father petitioned to enforce the parenting time order and for contempt based in part on the denial of his parenting time.

¶11           The superior court conducted an evidentiary hearing on Father's petition to enforce and found no good cause for Mother's refusal to comply with the parenting time orders, including orders to participate in therapeutic intervention.  The court ordered Father to start unsupervised parenting time on June 7, 2020.  The court sanctioned Mother $25 for each missed visit from April 7 to June 14, 2020, $50 from June 14 to July 12, and $75 per missed visit starting on July 12, 2020.  Mother amended her notice of appeal to include the contempt order.

## DISCUSSION

I.    The Evidence in the Record Does Not Support the Unsupervised Parenting Time Order

¶12           Mother contends the superior court abused its discretion by awarding unsupervised parenting time without prior therapeutic intervention.  We review the court's legal decision-making and parenting time orders for an abuse of discretion.  *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018).  An abuse of discretion occurs when the record is devoid of competent evidence to support the decision, or when the court commits an error of law in the process of reaching a discretionary conclusion.  *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (internal quotation marks and citations omitted).

¶13     Based on the evidence at the June 2019 trial, the superior court ordered supervised parenting, finding it necessary to protect the child's physical, mental, moral, or emotional health.  The court found there had been no contact between Father and the child since the August 2017 domestic violence incident.  The court ordered that supervised parenting time would start two hours per week *after* the TI determined contact between Father and the child was "therapeutically appropriate."  After four weeks, parenting time would be unsupervised, with the amount of time gradually increasing every four weeks.

¶14     The final ruling again awarded Mother sole legal decision-making authority based on the existence of significant domestic violence by Father.  *See* A.R.S. § 25-403.03(A).  However, unlike the 2019 temporary order, after analyzing the best interest factors, the court ordered Father to begin immediately unsupervised parenting time without any prior therapeutic intervention.  The court re-appointed Dr. DiCarlo as the TI, noting that the parties had not yet begun the therapeutic intervention process.

¶15     The final parenting time order differed significantly from the 2019 temporary order.  The court did not explain why it reached a different conclusion between the 2019 temporary order and the final order even though the two orders were based on the same evidence.  Nevertheless, it changed the parenting plan from supervised parenting time after approval from the TI to immediate unsupervised parenting time without any prior therapeutic intervention.  At the time of the trial, both parties agreed with Dr. Weinstock's recommended parenting plan that included therapeutic intervention, supervised parenting time, and the fact that the TI would determine when parenting time would begin.

¶16     The evidence at trial supported the parenting plan in the 2019 temporary order.  For instance, Dr. Weinstock opined that Father should not have unsupervised parenting time "until he changes significantly his behaviors and beliefs" and because Father is "at risk of losing control in terms of his anger."  Dr. Weinstock concluded that although Father did not pose a high risk of physically abusing the child, the risk of psychological abuse or manipulation continued.  According to Dr. Weinstock, that risk remained low in a therapeutic setting, which is why he recommended supervised parenting time and therapeutic intervention.  He also concluded that it would be in the child's best interest to communicate her feelings to Father in a therapeutic environment, and Mother had not allowed that.  Dr. Weinstock recommended that therapeutic intervention would allow the

child to learn to communicate with the parents, work on boundaries with Mother, and overcome conflicting feelings regarding Father.

¶17            The final order did not address this evidence or the fact that the parties agreed to Dr. Weinstock's proposed parenting time plan that included therapeutic intervention *before* any *supervised* parenting time started.  Instead, the court noted that the therapeutic intervention process had not begun and there was "no longer the opportunity to lay therapeutic groundwork before initiation of Father's parenting time."  This implies a change of circumstances after the trial that would warrant unsupervised parenting time without the TI's input.  However, the court failed to explain what evidence supported this inference.  Nor did the parties have an opportunity to address how circumstances may have changed or present additional evidence relevant to the child's best interests based on any such changed circumstances.  Without an explanation regarding what evidence the court considered in altering its conclusion from the 2019 temporary order, we cannot determine what evidence supports the new parenting plan in the final order.

¶18            Father argues that we must affirm the final order because Mother failed to provide the complete trial transcript for appellate review. Mother provided a partial trial transcript that included only Dr. Weinstock's testimony.  Mother, as the appellant, is responsible for ordering the relevant transcripts. *See* ARCAP 11(c).  We will generally presume that missing portions of the record support the superior court's findings and conclusions. *See State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003).  However, the 2019 temporary order and the final order contain contradictory parenting-time orders based on the same record.  As discussed above, substantial evidence supported the 2019 temporary order.  Furthermore, both parties agreed with the parenting plan in the 2019 temporary order.  Considering these facts, we decline to presume that the missing portion of the trial transcript, consisting of only the parents' testimony, supports the final order for unsupervised parenting time without an explanation from the court on how it reached a different conclusion.

¶19            The superior court abused its discretion by entering a final parenting time order that differed from the 2019 temporary order based on

the same evidence without explanation.[1] Accordingly, we reverse the final parenting time order and remand with instructions to reopen the proceedings to address the current circumstances and the child's best interests. Given this resolution, we need not address that the parenting plan lacked a procedure for exchanging the child. On remand, the parenting plan shall include this procedure as required by A.R.S. § 25-403.02(C)(4) (parenting plans must include, *inter alia*, "[a] procedure for the exchanges of the child, including location and responsibility for transportation").

II.     The Superior Court Did Not Abuse its Discretion in Allocating Fees

**¶20**        Initially, the superior court ordered Father to pay Dr. Weinstock's fees, subject to reallocation. After the trial, the court ordered Mother to pay 25% of Dr. Weinstock's fees. Mother argues the court abused its discretion because (1) Father requested the comprehensive family evaluation, and (2) she did nothing to increase the cost of the evaluation.

**¶21**        The initial order was subject to reallocation. Although Mother claims Dr. Weinstock spent the majority of his time addressing Father's domestic violence and other issues, Dr. Weinstock thoroughly evaluated the entire family. Furthermore, the financial information available at the trial showed that Mother had greater financial resources. *See* A.R.S. § 25-406(B) (courts shall allocate custody evaluator's fees based on the financial resources of both parties). Thus, the court did not abuse its discretion in allocating 25% of Dr. Weinstock's fees to Mother.

**¶22**        Mother also contends the superior court abused its discretion by ordering her to pay half Dr. DiCarlo's fees because Father's abuse necessitated therapeutic intervention. Mother cites A.R.S. § 25-403.03(F)(5), which provides that the court *may* allocate the cost of supervised parenting time to the parent who committed domestic violence. Assuming this provision applies to therapeutic intervention, which is different from

---

[1]      In most circumstances, temporary orders are based on a truncated hearing with little opportunity for discovery. The final orders are generally entered after an evidentiary hearing after the completion of discovery. In the typical scenario, upon review of a final order that differed from a temporary order we would not expect the court to explain how it arrived at a different conclusion based on a more robust record. However, this is not the typical case and a different result on the same record requires an explanation for appropriate appellate review.

supervised parenting time, the statute is discretionary. *See Ball v. Ball*, 250 Ariz. 273, 277, ¶ 11 (App. 2020) (explaining that use of the word "may" indicates permissive intent). Although Father's domestic violence seriously and negatively impacted the family, we cannot say the court abused its discretion by ordering that the parties equally split the cost of therapeutic intervention, particularly in light of the disparity of resources favoring Mother.

III.    The Record Does Not Support the Denial of Mother's Request for Attorneys' Fees

**¶23**        Mother argues the superior court abused its discretion by denying her request for attorneys' fees under A.R.S. § 25-324. We review the ruling on attorneys' fees for an abuse of discretion. *MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 36 (App. 2011). Ordinarily, we would affirm the denial of fees based on the court's findings that Mother has greater financial resources and neither party acted unreasonably. *See* A.R.S. § 25-324(A) (authorizing an award of attorneys' fees after considering the parties' financial resources and the reasonableness of their positions). However, we cannot conclude the record supports these findings because the court made contradictory findings regarding these factors in the 2019 temporary order based on the same evidence.

**¶24**        The 2019 decree found no substantial disparity in financial resources and that both parties acted unreasonably. In contrast, the 2020 order found Mother "has considerably more resources" and that neither party acted unreasonably. Although the 2019 financial affidavits indicate that Mother earns significantly more than Father, the court had this same evidence before it in 2019 when it found no disparity. In short, we cannot say that the record supports the denial of Mother's request for attorneys' fees and, therefore, reverse that order and remand for reconsideration.

IV.    Mother Violated Parenting Time Orders

**¶25**        Mother argues the superior court abused its discretion in finding that she violated the final, unsupervised parenting time order. We lack jurisdiction over the appeal from the order finding Mother in contempt. *See Burton*, 205 Ariz. at 30, ¶ 18. However, we exercise our discretion to treat Mother's appeal from the contempt order as a petition for special action and accept jurisdiction. *Id.* (citing *Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001)). We review contempt orders for an abuse of discretion. *Danielson*, 201 Ariz. at 412, ¶ 40.

¶26        Mother contends her actions did not constitute contempt because (1) the order did not specify a procedure for exchanging the child, (2) the child refused to obey the order, and (3) the temporary order appointing the TI was invalid.  To prove contempt, the party filing the petition must show the alleged contemnor had notice of and failed to comply with a prior court order.  *See* Ariz. R. Fam. Law P. ("ARFLP") 92(d).  The contemnor, however, may show that he or she did not willfully fail to comply.  ARFLP 92(e).  "Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the [superior] court."  *O'Brien v. O'Brien*, 161 A.3d 1236, 1250-51 (Conn. 2017).

¶27        First, the lack of a procedure for exchanging the child did not render the entire parenting time order void.  Regardless, an order issued by a court with jurisdiction must be obeyed until it is reversed.  *See Broomfield v. Maricopa Cnty.*, 112 Ariz. 565, 568 (1975).  The evidence showed Mother had notice of the final parenting time order, which included therapeutic intervention.  Father attempted to exercise parenting time for the first time on April 12, 2020, after the stay was lifted.  However, Father's probation precluded him from contact with Mother and the child, and he was not discharged from that probation until April 27, 2020.  Although Mother's refusal to allow parenting time while the no-contact order was in place may be understandable, it did not excuse her from participating in court-ordered therapeutic intervention. However, we vacate the $25 penalty for the three Sundays in April 2020 that predate Father's release from probation. Second, Mother failed to show that the child's refusal to see Father in an unsupervised setting included a refusal to engage in therapeutic intervention.  And Mother's third argument is without merit because the court found she failed to comply with the March 2020 final parenting time order, not the 2019 temporary order.  Thus, the court correctly found that Mother willfully violated the March 17, 2020 parenting time order.

## ATTORNEYS' FEES ON APPEAL

¶28        Both parties request an award of attorneys' fees on appeal under A.R.S. § 25-324.  In the exercise of our discretion, we decline to award fees to either party.  We also decline to award costs on appeal because both parties prevailed in part.

## CONCLUSION

¶29        We reverse the parenting time and attorneys' fees orders and remand for reconsideration consistent with this decision.  We vacate the $25

penalty imposed for the three Sundays in April 2020 that predate Father's release from probation. We affirm all other orders and decline to award attorneys' fees or costs on appeal.

